**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| **ERIK WIMSATT** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** <u>3:24-cv-268-GNS</u> |
| | ) | |
| **PETRO TOWERY, INC.** | ) | |
| | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## COMPLAINT

### I.    PARTIES

1.      The Plaintiff, Erik Wimsatt (hereinafter "Wimsatt" or "Plaintiff"), is a Louisville, Jefferson County, Kentucky resident.

2.      The Defendant, Petro Towery, Inc. (hereinafter "PT" or "Defendant"), is a Kentucky Corporation operating and conducting business in Louisville, Jefferson County, Kentucky.

### II.    JURISDICTION AND VENUE

3.      This is an action for violations of the Family Medical Leave Act ("FMLA") pursuant to 29 USC §2601 et. seq. and for violations of Kentucky Revised Statute ("KRS"), Chapter 344 et. seq.

4.      This Court has original jurisdiction pursuant to the provisions of 29 USC §2601 et. seq.

5.      Venue is proper in this district because the actions giving rise to this Complaint occurred in this judicial district.  Further, Defendant operates and conducts business within this judicial district.

### III.  FACTUAL BACKGROUND

6.      Wimsatt is a former employee of PT.

7.      Wimsatt began his employment at PT on October 16, 2022, and worked in the position of Construction Technician.

8.      PT is an "employer" within the meaning of the FMLA and KRS §344 at all times relevant to this Complaint.

9.      Wimsatt was an "eligible employee" within the meaning of the FMLA, at all times relevant to this Complaint.

10.     During his employment at PT, Wimsatt proved to be an extremely reliable, successful, and dedicated employee, specifically never being issued any disciplinary or corrective actions during his employment

11.     Throughout his employment, Wimsatt received "meets" or "exceeds" expectations on his performance reviews from the Defendant.

12.     On February 16, 2024, while at work, Wimsatt began experiencing abdominal pain.

13.     Wimsatt completed his shift on February 16, 2024, although he was in significant pain.

14.     On Sunday, February 18, 2024, at approximately 7:00 p.m., Wimsatt sought medical treatment at the Emergency Department with extreme abdominal pain.

15.     Upon medical examination, Wimsatt was diagnosed with acute appendicitis, which required emergency surgery.

16.     On the morning of Monday, February 19, 2024, Wimsatt underwent a laparoscopic appendectomy. [A copy of Wimsatt's Hospital Discharge Summary is attached hereto as Exhibit "1"].

17.     Following the medical procedure, Wimsatt was required to use a catheter for at least the following week and instructed to remain off work.

18.     Upon completion of his surgery, Wimsatt contacted PT's Human Resources Director, Patti Albertini (hereinafter "Albertini"), informing her of his diagnosis, emergency appendectomy, catheter insertion, and inability to return to work for at least one (1) week under his physician's order. [A copy of Wimsatt's and Albertini's 2/19/2024 Emails are attached hereto as Exhibit "2"].

19.     Shortly after his email to Albertini, Wimsatt contacted PT's Head of Information Technology ("IT"), Seth Newton (hereinafter "Newton"), specifically requesting certification forms for medical leave under the Family and Medical Leave Act ("FMLA") and Short-Term Disability ("STD").

20.     In response, Wimsatt was contacted by Albertini, who provided him with the requested documentation. [A copy of Wimsatt's and Albertini's 2/19/2024 FMLA Emails are attached hereto as Exhibit "3"].

21.     On February 22, 2024, Wimsatt provided his FMLA certification paperwork, as well as his STD application, to his provider, Mason Holbrook, M.D. [A copy of Wimsatt's FMLA Certification Paperwork and STD application is attached hereto as Exhibit "4"].

22.     Wimsatt's provider proceeded to complete the certification paperwork on February 27, 2024. *Exhibit 4.*

23.     Upon receipt of the completed forms, Wimsatt immediately provided copies to the Defendant for approval. [A copy of Wimsatt's and Albertini's 2/27/2024 – 2/28/2024 Emails are attached hereto as Exhibit "5"].

24.     The following day, on February 28, 2024, Albertini contacted Wimsatt confirming receipt of his certification paperwork for FMLA leave. *Exhibit 5*.

25.     Additionally, in her response, Albertini requested confirmation that Wimsatt had his scheduled follow-up visit on March 6, 2024, and that he was to remain off work, as indicated in his certification paperwork, until March 10, 2024. *Exhibit 5*.

26.     Wimsatt confirmed both these dates, at which point Albertini informed him that she would submit the paperwork as needed. *Exhibit 5.*

27.     At no point in his communications with the Defendant was Wimsatt ever informed that there was any issue with his FMLA certification paperwork or his FMLA-qualified absences.

28.     On March 6, 2024, Wimsatt returned to University of Louisville Physicians, General Surgery Associates, for his follow-up appointment, whereupon he was cleared to return to work on March 11, 2024.

29.     On March 7, 2024, Wimsatt reviewed the Defendant's work schedule to ensure that he was listed to work as of March 11, 2024, his return-to-work date. [A copy of the 3/7/2024 Emailed Schedule is attached hereto as Exhibit "6"].

30.     However, when Wimsatt checked the schedule on March 8, 2024, his name had been removed. [A copy the 3/8/2024 Emailed Schedule is attached hereto as Exhibit "7"].

31.     Due to being removed from the schedule, Wimsatt became concerned that he had been terminated while on a legally protected medical leave of absence, and therefore, he proceeded to call the following individuals: PT's Louisville Foreman, Dean Rigney (hereinafter "Rigney"); PT's Assistant Director of Field Services, Nathan Waters (hereinafter "Waters"); PT's Director of Field Services, Tim Wallace (hereinafter "Wallace"); and PT's Louisville Service Manager, Jason Pharis (hereinafter "Pharis").

32.     PT failed to answer or return Wimsatt's calls or inform him of his employment status over the coming days.

33.     On March 11, 2024, unsure of his employment status, Wimsatt proceeded to return to work at PT in accordance with his FMLA certification and return-to-work documentation, as well as in compliance with his correspondence with the Defendant.

34.     Upon his arrival to the facility, Pharis informed Wimsatt, via text, that in order to work that day, he would need to provide "a full release from Dr [sic] with no restrictions," and that his FMLA paperwork was "just a [sic] estimate." [A copy of Pharis' 3/11/2024 Text Message is attached hereto as Exhibit "8"].

35.     Upon receiving the request from Pharis, Wimsatt immediately contacted his medical provider and had a return-to-work note sent to the Defendant. [A copy of Wimsatt's 3/11/2024 Return-to-Work Note is attached hereto as Exhibit "9"].

36.     On the same day, March 11, 2024, despite his compliance with the PT's request, Wimsatt received a call from Albertini, Waters, Wallace, and Pharis, who informed him that he was being terminated, effective immediately, for alleged "poor performance."

37.     As of March 11, 2024, Wimsatt had never been issued any corrective actions or verbal warnings; in fact, Plaintiff had only received positive performance reviews.

38.     Upon being notified of the pretextual reason for his termination at PT, when Wimsatt requested examples of jobs that he had performed poorly on, Pharis stated he could not provide any examples.

39.     Wimsatt's unlawful termination occurred only a few hours *after* his return to work from a legally protected medical leave of absence under FMLA.

40.     The Defendant's removal of Wimsatt from the March 11, 2024 work schedule serves as clear evidence that PT effectively terminated Wimsatt on March 8, 2024, while Wimsatt was **still on a legally protected leave of absence**. *Exhibit 7.*

41.     PT terminated Wimsatt within close proximity of Wimsatt's approval and utilization of a legally protected medical leave of absence under the FMLA.

42.     Wimsatt's diagnosis of acute appendicitis, emergency appendectomy surgery, hospital stay, and doctor's appointments constitutes as a "serious health condition" under the Family Medical Leave Act ("FMLA"), 29 United States Code § 2601 *et. seq.*

43.     The Defendant unlawfully interfered and retaliated against Wimsatt for his request and utilization of medical leave under the FMLA.

44.     The Defendant perceived and/or regarded Wimsatt as having a disability.

45.     The Defendant terminated Wimsatt on the basis of his perceived and/or regarded disability.

46.     The Defendant refused to accommodate Wimsatt's perceived disability by only permitting his return to work "with no restrictions."

47.     Following his unlawful termination, Wimsatt has understandably suffered from emotional distress, including but not limited to, embarrassment, increased stress and anxiety, loss of sleep, as well as symptoms related to depression.

### III.     CLAIMS AND CAUSES OF ACTION

#### COUNT I.     VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (INTERFERENCE)

48.     Wimsatt re-alleges all allegations contained in paragraphs 1 through 47 above as if fully set forth herein.

49.     Wimsatt was an eligible employee under the FMLA and at the time of his leave, Wimsatt had been employed by PT for at least twelve (12) months.

50.     Wimsatt requested leave for his own serious health condition under the FMLA, 29 U.S.C. § 2612(a)(1)(D).

51.     Wimsatt was entitled to receive leave pursuant to the FMLA.

52.     PT interfered with, restrained, and/or denied Wimsatt's exercise of his rights under the FMLA by refusing his attempts to return to work following his medical leave of absence, requiring additional medical releases that Wimsatt could only return to work "with no restrictions," and for completely ignoring his numerous phone calls and requests for information regarding being removed from the work schedule.

53.     As a result of PT's violations of the FMLA, Wimsatt has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

### COUNT II.     VIOLATIONS OF THE FAMILY MEDICAL LEAVE ACT (RETALIATION)

54.     Wimsatt re-alleges all allegations contained in paragraphs 1 through 53 above as if fully set forth herein.

55.     Wimsatt was an eligible employee under the FMLA and requested medical leave for his own serious health condition under the FMLA, 29 U.S.C. § 2612(a)(1)(D).

56.     PT retaliated against Wimsatt by disciplining and terminating Wimsatt for utilizing FMLA-qualifying absences.

57.     PT's actions, as set forth above, constitute retaliation in violation of the FMLA.

58.     As a result of PT's violations of the FMLA, Wimsatt has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

**COUNT III.   UNLAWFUL DISCRIMINATION AND DISCHARGE ON THE BASIS OF A "PERCIEVED" DISABILITY and/or "REGARDED AS" DISABILITY (KRS § 344)**

59.     Wimsatt re-alleges all allegations contained in paragraphs 1 through 58 above as if fully set forth herein.

60.     Defendant unlawfully terminated Wimsatt's employment on the basis of a "perceived" disability and/or a "regarded as" disability in violation of KRS § 344.

61.     As a result of PT's violations of KRS § 344, Wimsatt has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

**COUNT IV.   FAILURE TO ACCOMMODATE "PERCIEVED" DISABILTY and/or "REGARDED AS" DISABILITY (KRS § 344)**

62.     Wimsatt re-alleges all allegations contained in paragraphs 1 through 61 above as if fully set forth herein.

63.     Defendant failed to accommodate Wimsatt's "perceived" disability and/or "regarded as" disability by refusing to permit him to return to work following his medical leave of absence until and unless he was cleared by his doctor to return "with no restrictions."

64.     As a result of PT's violations of KRS § 344, Wimsatt has been damaged in an amount in excess of the minimum jurisdictional limits of this Court.

**COUNT V.   MANDATORY RECOVERY OF ATTORNEY'S FEES AND COSTS**

65.     Wimsatt re-alleges all allegations contained in paragraphs 1 through 64 above as if fully set forth herein.

66.     Wimsatt is mandatorily entitled to recover his attorney's fees and costs pursuant to the provisions of the FMLA and/or KRS § 344.

## IV.     PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Erik Wimsatt, respectfully prays that he be awarded the following relief and all other relief to which he may be entitled against the Defendant, Petro Towery, Inc.:

A.     Trial by jury;

B.     Judgment against Defendant on all claims asserted herein;

C.     Compensatory and actual damages including but not limited to past and future lost wages and past and future lost benefits;

D.     Compensatory damages including but not limited to emotional distress, mental anguish, humiliation and embarrassment;

E.     All statutory remedies provided by the FMLA and KRS § 344;

F.     Liquidated damages pursuant to the FMLA for Defendant's willful violations of the FMLA;

G.     Equitable relief in the form of reinstatement, promotion and/or front pay;

H.     Punitive damages to punish and deter similar future unlawful conduct;

I.     An award of statutory attorney fees, expert witness fees, costs and expenses;

J.     Statutory interest on all monetary damage awards, verdicts, or judgments; and

K.     All other and additional relief to which Wimsatt may be entitled.

Respectfully submitted,

THE ZOPPOTH LAW FIRM


/s/ *Bradley S. Zoppoth*
Bradley S. Zoppoth
Mitchell E. Esterle
6510 Glenridge Park Place, Suite 1
Louisville, KY  40222
(502) 568-8884
bsz@zoplaw.com
mee@zoplaw.com
*Counsel for the Plaintiff, Erik Wimsatt*